1 Octavio Cardona-Loya II, SBN 255309
2 Law Offices of Eric F. Fagan
3 2300 Boswell Rd. Suite 211
  Chula Vista, CA  91914
4 Octavio@efaganlaw.com
5 Phone: 619-656-6656; Fax: 775-898-5471
  Attorney for Plaintiff Antonio Escobedo
6
7
8               **UNITED STATES DISTRICT COURT**
9               **SOUTHERN DISTRICT OF CALIFORNIA**

10 ANTONIO ESCOBEDO, an individual,     ) Case No.:  3:09-CV-01557 BTM (BLM)
11                                      )
              Plaintiff,               ) **Plaintiff Antonio Escobedo's**
12                                     ) **Opposition to Defendant Countrywide**
13 v.                                  ) **Home Loans, Inc.'s Motion to Dismiss**
                                       )
14 COUNTRYWIDE HOME LOANS, INC.,  a    ) Date: September 18, 2009
15 corporation, and DOES 1 through 20 inclusive, ) Time: 11:00 a.m.
16                                     ) Courtroom: 15
              Defendants.             )
17                                    )
18 _____ ) The Hon. Barry T. Moskowitz
19
20                     **I. INTRODUCTION**
21        Defendant COUNTRYWIDE HOME LOANS, INC. (CHL) contracted with Fannie
22 Mae to provide foreclosure prevention services intending to benefit qualified homeowners
23 with affordable loan modifications; Fannie Mae acted as the U.S.' financial agent. The
   government allocated $1,864,000,000 to CHL as an incentive to do so.  CHL however is
24 refusing to comply with the terms of the contract of which Plaintiff Antonio Escobedo is a
25 third-party beneficiary.  In addition, CHL engaged in unlawful business practices in
26 attempting to collect Plaintiff's mortgage payments.
27 ////
28

## II. STANDARD OF REVIEW

"The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A Rule 12(b)(6) dismissal is proper only in "extraordinary" cases. *U.S. v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).  When considering a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether the plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337-338 (9th Cir. 1996).

## III. ISSUES

**A.  Whether Plaintiff, a Qualified Borrower Under the Home Affordable Modification Program, is an Intended Beneficiary Under CHL's Contract with Fannie Mae thus Conferring upon Him Standing to Enforce the Contract.**

CHL contracted with Fannie Mae to assist qualified borrowers to avoid foreclosure by modifying loans that it services.  The Contract specifically delineates CHL's obligations and confers benefits on a limited class: the qualified borrowers whose loans CHL services.  Plaintiff's loan is such a loan that CHL services.

**B.  Whether CHL Engaged in Unlawful Debt Collection Practices by Calling Plaintiff on a Continual Basis, Contacting him Directly Knowing he had Retained Counsel, and Contacting Third Parties Regarding His Debt.**

The Rosenthal Fair Debt Collection Practices Act prohibits debt collectors from enaging in these types of collection activities.

**C.  Whether CHL's Harrasing and Unlawful Debt Collection Practices Invaded Plaintiff's Privacy.**

A person has an expectation of privacy in their affairs.  Plaintiff did not expect CHL to disclose his private financial matters to third parties. Neither was he prepared for the barrage of telephone calls that he received from CHL.

**D. Whether CHL's Breach of Contract, Violations of the Rosenthal Act, and Invasion of Privacy Constitute Unlawful Business Practices When California Law Prohibits Such Activity.**

California's Business and Professions Code proscribes unlawful business practices.

## IV. STATEMENT OF FACTS

In February 2007, Plaintiff took out a loan (the "Loan") against his residence. Complaint at ¶14.  CHL became the Loan's servicer and accepts payments on behalf of the current unknown Investor that owns the Loan. *Id.* at ¶17.  Plaintiff had difficulty making his monthly mortgage payments and asked CHL for assistance. *Id.* at ¶20.

On April 17, 2009, CHL entered into a Servicer Participation Agreement (the "Contract") for the Home Affordable Modification Program (HAMP) with Fannie Mae. This is part of the Emergency Economic Stabilization Act of 2008. *Id.* at ¶¶27-28. CHL agreed to provide eligible borrowers with a loan modification. Complaint, Exhibit 1.

Plaintiff attempted to obtain a modification of the Loan; both he and his loan qualify under HAMP.  CHL refused to provide Plaintiff with a complying modification. *Id.* at ¶¶34-38. Instead, CHL harassed Plaintiff in attempts to collect his mortgage payments.  CHL contacted Plaintiff on a continual basis, calling his home, work, and cell numbers.  *Id.* at ¶¶21-22.  CHL further contacted Plaintiff's employer on numerous occasions. *Id.* at ¶25. CHL continued to contact Plaintiff even after he informed CHL he was represented by an attorney and provided the name and phone number of his attorney. *Id.* at ¶24.

## V. ARGUMENT

**A.  Plaintiff, a Qualified Borrower Under the Home Affordable Modification Program, is an Intended Beneficiary Under CHL's Contract with Fannie Mae thus Conferring upon Him Standing to Enforce the Contract.**

"A contract, made expressly for the benefit a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code §1559.  The Contract benefits

a specific and limited class of borrowers who can seek enforcement of the Contract. Plaintiff is such a qualified borrower.   Given his standing to enforce the Contract's terms, Plaintiff will forego his Declaratory Relief claim.

For an action involving third-party beneficiaries under a government contract to proceed depends upon an analysis of the following three critical cases:

**i. _Shell v. Schmidt,_ 126 Cal.App.2d 279 (1954)**

The *Shell* plaintiffs filed suit as third-party beneficiaries alleging a breach of contract between the defendant and the Federal Housing Authority.  The defendant was to build homes for sale to veterans.  In return, the defendant received priority in securing materials needed to build the homes.  Relying on Cal. Civ. Code §1559, the *Shell* court held:

> "Once it is established that the relationship between the contractor and the government is contractual, it follows that veterans purchasing homes, that is, the class intended to be protected by the contract, are third party beneficiaries of that contract.  As already pointed out, the statute and the regulations passed thereunder resulting in the contract were passed to aid and assist veterans and for their benefit.  Purchasing veterans constitute the class intended to be benefitted, and the contract must therefore be for their benefit." *Shell*, 126 Cal.App.2d at 290.

The *Shell* court concluded the plaintiff-veterans could maintain their cause of action as third-party beneficiaries.  *Id.*

**ii. _Martinez v. Socoma Companies, Inc_., 11 Cal.3d 394 (1974)**

The Plaintiffs in *Martinez* filed suit as third-party beneficiaries alleging a breach of contract between the defendant and the Secretary of Labor.  The defendant contracted to hire and train unemployed residents of a "Special Impact Area" in Los Angeles.  In return, the defendant would receive government funds.  Although approving *Shell*, the *Martinez* court placed greater weight on the *Restatement of Contracts* rather than the common law principles encompassed in Cal. Civ. Code §1559 applied in *Shell*.

The *Martinez* court held the issue of plaintiffs' standing as third-party beneficiaries depended on the intent of the parties as manifested by the contract and the circumstances

surrounding its formation. *Martinez,* 11 Cal.3d at 401-402.  The *Martinez* court noted upon a breach, defendant Socoma would refund paid monies to the government.  The government would lose as result of the breach as opposed to people to be trained and employed.  The *Martinez* court further noted that third-party actions could affect the administrative procedures in place to address disputes under the contract.  Ultimately, the *Martinez* plaintiffs were deemed incidental beneficiaries without standing.  *Id.* at 402.

### iii.  *Zigas v. Superior Court,* 120 Cal.App.3d 827 (1981)

The *Zigas* plaintiffs filed suit alleging that their landlord collected excessive rents in violation of a financing agreement.  The plaintiffs' landlord received over $5 million in financing as part of the National Housing Act.  In turn, the landlord had to adhere to the HUD approved schedule of rents.  After comparing and distinguishing *Shell* and *Martinez*, the *Zigas* court held the plaintiffs to be third-party beneficiaries with standing.

The *Zigas* plaintiffs mirrored the situation of the plaintiffs in *Shell*.  The *Zigas* renters suffered damages as *Shell*'s veterans had, there were no administrative procedures to address disputes as in *Martinez*, and the contract between the landlord and HUD was "narrow and specific: to provide moderate rental housing for families with children; in *Shell*, to provide moderate priced homes for veterans." *Zigas*, 120 Cal.App.3d at 837-838.

The *Zigas* court noted the "requirement of HUD approval of rent increases could only benefit the tenants. Furthermore, even the most cursory review of the statutes and regulations which resulted in the contract … leads to the conclusion that the tenants constitute the class which Congress intended to benefit." *Id.* at 835.

### iv.  CHL's Contract with Fannie Mae

The Contract is entitled "COMMITMENT TO PURCHASE FINANCIAL INSTRUMENT and SERVICER PARTICIPATION AGREEMENT…." and is easily bifurcated.  The Servicer Participation section spells out the Servicer's obligations toward qualified borrowers.  The "Commitment to Purchase" portion specifies Fannie Mae's obligations toward the Servicer vis-à-vis modified loans.  If the Servicer does not modify a loan, the obligation of Fannie Mae to purchase does not arise.  The more significant of the

two sections is the Servicer Participation part.

Plaintiff is a third-party beneficiary of the Contract.  CHL erroneously states that "There are no strict requirements that Countrywide make *any* modification [pursuant to the Contract]." Motion to Dismiss, page 3:25-26. The Contract expressly states that "[CHL] shall perform the loan modification and other foreclosure prevention services described in … the Program guidelines and procedures issued by the treasury…." Complaint, *Exhibit 1* at p. 2, ¶1A.  This is the essence of the Servicer's participation.

Given the detailed steps CHL must take as described in the Guidelines, CHL's observation that the Contract "peripherally involves loan modifications" is sophistic. Motion to Dismiss at 4:2.  Attached to the Complaint as Exhibit 3, the Summary of Guidelines clearly states the Contract's purpose is to provide foreclosure prevention services at paragraphs one and four:

> "Making Home Affordable ***will offer assistance to as many as 7 to 9 million homeowners***, making their mortgages more affordable and helping to prevent the destructive impact of foreclosures on families, communities and the national economy…

> "The ***Home Affordable Modification*** program will help up to 3 to 4 million at-risk homeowners avoid foreclosure by reducing monthly mortgage payments." The "program guidelines … are expected to become standard industry practice in pursuing affordable and sustainable mortgage modifications."

Like *Shell* and *Zigas*, the Contract is narrow and specific. It details the procedures a Servicer *shall* follow to determine which borrowers qualify for a HAMP loan modification. The Guidelines give at page two the borrower qualification terms.  Like *Zigas*, qualifying borrowers constitute the class CHL and Fannie Mae intended to protect.  Plaintiff meets the criteria for qualification under the Contract.  *Id*. at ¶34. CHL does not deny his qualification.

As a qualified borrower, CHL and Fannie Mae intended to benefit Plaintiff.  As in *Shell* and *Zigas*, Plaintiff as a plaintiff-borrower will suffer directly from a breach of the Contract. If CHL modifies the loan, Plaintiff keeps his home.  If CHL refuses to comply

with the explicit requirements of the Contract, Plaintiff will lose his home.  The benefit of the Contract cannot be any more apparent.

There are no administrative procedures set forth to address the breach of the Servicer Participation section of the Contract.  There is no "watch dog" in place to ensure CHL complies with the terms of the Contract.  As the party suffering from the breach, qualified borrowers have no recourse other than through the courts to enforce the provisions of the Contract as third-party beneficiaries. There is no other forum to seek timely redress. Holding otherwise would render the Home Affordable Modification program ineffectual.

The present action is nearly identical to circumstances in *Shell* and *Zigas*.  As a qualified borrower, Plaintiff is a third-party beneficiary to the Contract and thus has standing to pursue an action for its breach.

**B.  CHL Violated the Rosenthal Act by Calling Plaintiff on a Continual Basis, Contacting him Directly Knowing he had Retained Counsel, and Contacting Third Parties Regarding the Debt.**

Failing to make payments on a debt invites debt collection. Collection efforts must be reasonable. The Rosenthal Act "prohibit[s] debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts…." Cal. Civ. Code §1788.1(b).

Excessive phone calls may constitute a pattern of harassment. *Joseph v. J.J. Mac Intyre Companies, LLC*, 281 F.Supp.2d 1156, 1164-5 (N.D. Cal. 2003).  The *Joseph* court held that frequent automated calls could create a Rosenthal Act violation.  The plain language of the statute prohibits "[c]ausing a telephone to ring repeatedly or continuously to annoy the person called" and "communicating with Plaintiff with such frequency as to be unreasonable and to constitute an harassment."  Cal. Civ. Code §§1788.11(d)&(e); Complaint at ¶50(b)&(c).

CHL contacted Plaintiff numerous times on a frequent basis at his work, home, and mobile phone numbers. Complaint at ¶¶22-23.  CHL called Plaintiff on the average of two to three times a day, every day of the week, to collect payments. Declaration of Antonio Escobedo at ¶¶2-8.  In addition, CHL violated Cal. Civ. Code §1788.17 which prohibits debt

collectors from communicating with a person other than the Plaintiff's attorney after the debt collector knows the Plaintiff was represented by an attorney. <u>Complaint</u> at ¶¶24, 50(f), <u>Escobedo</u> at ¶¶4-6.  CHL further violated this section  by informing Plaintiff's employer that he owed a debt.  <u>Complaint</u> at ¶¶25, 50(e), <u>Escobedo</u> at ¶¶7-8.

The fact that Plaintiff owes a debt does not change the unlawful nature of CHL's acts. Plaintiff pleads sufficient facts showing CHL violated the Rosenthal Act; he should be given the opportunity to prove this set of facts supporting his claim for relief.

### C.  CHL's Unlawful Debt Collection Practices Invaded Plaintiff's Privacy.

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Miller v. National Broadcasting Co.*, 187 Cal.App.3d 1463, 1482 (1986), quoting *Restatement (Second) of Torts* §652B (1977).  The volume and frequency of phone calls made to collect a debt creates "a genuine issue of fact as to whether [a] Plaintiff's privacy was invaded." *Joseph,* 238 F. Supp. 2d at 1169.

CHL had no right or need to contact Plaintiff incessantly or discuss Plaintiff's dire financial straits to his employer.  A trier of fact can find that CHL's behavior invaded Plaintiff's privacy and would be offensive to a reasonable person.

### D.  CHL's Breach of Contract, Violations of the Rosenthal Act, and Invasion of Privacy Constitute Unlawful Business Acts As California Law Prohibits Such Activity.

Cal. Bus. & Prof. Code §17200 proscribes "any unlawful, unfair or fraudulent business act of practice…."  Any such act serves the basis for a claim of unfair competition.  *Cal-Tech Commn's, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4[th] 163, 180 (1999); *In re Pomona Valley Med. Group*, 476 F.3d 665, 674 (9th Cir. 2007).

Because Plaintiff properly pled a breach of contract, violations of the Rosenthal Act, and an invasion of his privacy, his §17200 claim is appropriate.

## VI. CONCLUSION

Defendant CHL contracted with the government to provide foreclosure prevention services to qualified borrowers.  In doing so, CHL and Fannie Mae intended to protect a limited and specific class of borrowers which includes Plaintiff Antonio Escobedo.  As an intended beneficiary, he has standing to bring this claim for breach of contract.

Moreover, CHL is liable for violating the Rosenthal Act and invading Plaintiff's privacy.  Plaintiff sufficiently pled facts supporting these claims.  Based on the foregoing, Plaintiff foregoes his claim for declaratory relief and respectfully requests the Court otherwise deny CHL's Motion to Dismiss in its entirety.


Dated: September 3, 2009             /s/Octavio Cardona-Loya II
                                    Octavio Cardona-Loya II,
                                    Attorney for Plaintiff Antonio Escobedo